IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**METROPOLITAN PROPERTY AND CASUALTY
INSURANCE COMPANY**,

    Plaintiff,

v.                                                **No. CIV 10-0154 MV/WDS**

**BRUCE DURAN; MICHELLE DURAN;
CHRIS DURAN; NATHANIEL QUINTANA HALE**,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before me on Plaintiff Metropolitan Property and Casualty Insurance Company's ("Metropolitan") motion for summary judgment, filed September 27, 2010 (Doc. 31). Metropolitan seeks a judgment declaring that the homeowner's insurance policy it issued to Defendants Bruce and Michelle Duran does not provide coverage for a June 6, 2006 accident involving the Durans' son, Chris Duran (who was a minor at the time the accident occurred), and Nathaniel Quintana Hale. Hale is currently suing the Durans in state court for injuries arising from that accident. The Durans responded to the motion; Hale did not. Metropolitan filed a notice that briefing was complete on October 26, 2010. *See* Doc. 35.

    I conclude that I have jurisdiction to, and should, resolve the coverage issue between the parties for several reasons. A declaration of rights will serve to settle legal relations and terminate the uncertainty giving rise to the proceeding. There is no indication that Metropolitan is seeking the declaratory remedy "merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata,'" and issuing a declaratory judgment in these circumstances will not "increase friction between our federal and state courts and improperly encroach upon state jurisdiction"

because the issue is not currently before the state courts. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). Further, there does not appear to be an immediate alternative remedy that "is better or more effective" because there is no active suit between the Durans and Metropolitan in state court regarding this issue at this time. *Id.* Because the homeowner's insurance policy is not ambiguous, and because the undisputed facts demonstrate circumstances under which the policy expressly excludes coverage for the motor-vehicle accident in this case, I will grant the motion.

## I.    APPLICABLE LEGAL STANDARDS.

In ruling on a motion for summary judgment, I must

> view the evidence and make inferences in the light most favorable to the non-movant. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). "Although we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party, the nonmoving party must present more than a scintilla of evidence in favor of his position." *Ford v. Pryor*, 552 F.3d 1174, 1177–78 (10th Cir. 2008) (citation omitted).

*Kerber v. Qwest Group Life Ins. Plan*, __ F.3d __, __, 2011 WL 2151201,*7 (10th Cir. 2011) (analyzing summary-judgment under the rules in effect before December 1, 2010). The Durans do not dispute most of the facts listed in Metropolitan's motion for summary judgment, but they also submitted affidavits alleging additional facts and legal conclusions.

Applying New Mexico substantive law in this diversity case, I must

> interpret unambiguous insurance contracts in their usual and ordinary sense unless the language of the policy requires something different. An insurance policy should be construed as a complete and harmonious instrument designed to accomplish a reasonable end. The parties to an insurance contract may validly agree to extend or limit insurance liability risks. Thus, exclusions in insurance policy coverage provisions that are clear and unambiguous and that do not conflict with public policy

2

expressed by statute will be enforced.

*N. M. Physicians Mut. Liab. Co. v. LaMure*, 860 P.2d 734, 737, 116 N.M. 92, 95 (1993) (citations omitted).  In determining whether an insurance policy provides coverage under the circumstances of this case, I must construe the language used, including the exclusions, "in the light of the context in which it is used." *Security Mut. Cas. Co. v. O'Brien*, 99 N.M. 638, 641, 662 P.2d 639, 642 (1983).  If an insurance policy does "not contravene public policy" and is "not ambiguous, [it] must be enforced as written." *Id.*  And a policy is not "ambiguous merely because certain words and terms are not fully defined in the contract." *Id.* (internal quotation marks omitted).

## II.     RELEVANT FACTS.

Hale's state-court complaint against the Durans seeks damages for bodily injury that he suffered in a four-wheeled motorized land vehicle (hereinafter "ATV" or "4-wheeler") accident involving Chris Duran.  Doc. 32 at 4, ¶¶ 11-12 (statement of undisputed facts).  Bruce and Michelle Duran owned the ATV, and it was stored on their residential premises.  *Id.* ¶ 13a.  Bruce submitted an affidavit stating that "[t]he '4-Wheeler' was in dead storage on my property, it had been inoperable for over a year."  Doc. 33, Ex. A at 2, ¶ 9.  Bruce states that he had "use[d] it principally for hauling things on my property and for irrigation." *Id.* at ¶ 11.  According to the Durans, on the night of June 6, 2006, after Bruce and Michelle had gone to bed, Chris and Hale, without Bruce and Michelle's knowledge or permission, hot-wired the ATV and drove it away.  *See id.* at ¶¶ 3, 5, 8. The boys subsequently were involved in an accident on County Road 84 in Santa Fe County, in which Hale was injured.  *See* Doc. 32 at 5, ¶¶ 19, 20.

Hale contends in his state-court complaint that Chris was negligent and that Bruce and Michelle "negligently entrusted" the ATV to Chris and are "vicariously liable" for his negligence; and he also contends that they "did not properly supervise" Chris on June 6, 2006.  Doc. 32 at 4, ¶¶

16, 17.  Although the Durans state that they "do not accept as unchallenged" paragraphs 16 and 17 of Metropolitan's statements of undisputed fact, Doc. 33 at 1, and insist that they neither negligently entrusted the ATV to Chris nor were negligent in supervising him, they do not dispute that Hale in fact made those allegations in his complaint, *see* Doc. 33, Exs. A, B.  Therefore, I accept as true paragraphs 16-17, whether or not a jury ultimately finds any of the Durans to be negligent or agrees with Hale's legal conclusions.  Metropolitan contends that the homeowner's policy it issued to the Durans does not provide coverage either for Hale's injuries suffered in the accident or for the liability that Hale seeks to impose on the basis of negligent entrustment and supervision.

In the relevant "LOSSES WE COVER" portion of section II of the Durans' Metropolitan homeowner's policy provides coverage for their personal liability for "bodily injury . . . to others for which the law holds you responsible because of an occurrence to which this coverage applies." Doc. 32, Ex. A at 5.  "Occurrence" means "accident."  *Id.* at 4.  And the term "you" means the persons named in the Declarations, *i.e.*, Bruce and Michelle, *see id.* at 1, as well as residents of the same household who are under twenty-one and in the care of the Durans, *i.e.*, their minor son Chris, *id.* at 4.

In the relevant "LOSSES WE DO NOT COVER" section of section II.8, the policy specifically excludes from coverage losses for bodily injury "arising out of"

> A.  the ownership . . . operation, use . . . of a motorized land vehicle . . . owned or operated by . . . you;
> B.  the entrustment by you of a motorized land vehicle . . . to any person;
> C. the failure to supervise or negligent supervision by you of any person a motorized land     vehicle . . ., or;
> D.  vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a motorized land vehicle . . . .

*Id.* at 7.  There are exceptions to these express exclusions, however.  The policy specifically extends coverage for "bodily injury . . . arising out of"

4

    a. a motorized land vehicle . . . in dead storage on the insured premises;
    b. a motorized land vehicle used exclusively on the insured premises;
    . . . .
    d. a motorized land vehicle, owned by you, principally designed for recreational use off public roads and not subject to motor vehicle registration, while on an insured premises;
    e. a motorized land vehicle, not owned by you, principally designed for recreational use off public roads and not subject to motor vehicle registration;
    f. a motorized land vehicle principally designed to service residential property

*Id.*

### III.    ANALYSIS

Based upon the plain language of the policy, coverage regarding the accident in this case is specifically excluded under Section II.8 (A) because the accident arose from the use of an ATV owned or operated by the Durans. Further, losses arising from Bruce and Michelle's alleged negligent entrustment, negligent supervision, or vicarious liability regarding the ATV are specifically excluded under Section II.8 (B), (C), and (D).

The Durans argue, however, that the exception found in Section II.8(a), which extends coverage for "bodily injury . . . arising out of [] a motorized land vehicle . . . in dead storage on the insured premises" applies because the ATV had been inoperable and was in "dead storage" when Chris and Hale hotwired and drove it away. The Durans suggest that this exception is ambiguous and should be construed in favor of coverage, asking:

> does this mean that if a claim was had based on this vehicle, would the injury have to occur on the premises of the insured or the fact that the instrumentality which caused the injury was in fact in dead storage on the insured premises; as was the vehicle in this case? The question is not raised frivolously as in the same paragraph a few sentences down it is made clear that the injury must occur on the insured premises wherein the policy provides; "d. a motorized land vehicle, owned by you, principally designed for recreational use off public roads, and not subject to motor vehicle registration, ***while on the insured premises***; …." (emphasis added).

Doc. 33 at 4. The Duran's "question" set forth above is far from lucid. But it appears that the

Durans are arguing that it is unclear under exception (a) whether the *injury* has to occur on the premises or whether the *vehicle involved in the injury* just has to have *been* in dead storage on the premises at some time, because exception (d) specifically requires that the injury arise from an ATV "***while on*** the insured premises" and exception (a) does not use the word "while." Even if I adopt the Duran's legal conclusion that the ATV had been in "dead storage" before Chris and Hale took it, I conclude that the Durans are attempting to give a strained and unreasonable construction to the exceptions.

The alleged ambiguity arises because the Durans have unreasonably conflated "claim" with "injury" and have ignored the general purpose of the homeowner's policy and the plain language in exception (a), which extends coverage only to injuries "arising out of [] a motorized land vehicle . . . ***in*** dead storage on the insured premises."

I first note that this exception arises in the context of *homeowner's* insurance, and not in an automobile policy. The purpose of a homeowner policy is to cover an insured's home and premises and any personal liability or medical payments arising from injuries or property damage sustained *on* that property. *See* Noralyn O. Harlow, J.D., Annotation, *Liability Insurance: When is Vehicle in "Dead Storage"*? 48 A.L.R.4th 591 (1986) ("Due to the wide availability of automobile liability insurance, and because the inclusion of coverage for automobile-related injuries and property damage in insurance contracts providing general liability protection would greatly increase the insurer's risk thereby increasing the insurance premiums, the general liability coverage of homeowner's and tenant's insurance policies commonly excludes coverage for injuries and property damage arising out of the ownership, maintenance, or use of motor vehicles."); *Standard Mut. Ins. Co. v. Marx*, 854 N.E.2d 710, 714 (Ill. App. 2006) (holding that an analysis regarding whether a homeowner's policy exception for "dead storage" applies should "focus[] on the vehicle's status at

the time the accident occurred"); *North Star Mutual Ins. Co. v. Carlson*, 442 N.W.2d 848, 855 (Minn. Ct. App.1989) (holding that "motor vehicles are inherently dangerous instrumentalities and homeowners policies generally do not contemplate coverage of injuries when the vehicle is maintained or used in one of its inherently dangerous capacities. . . .Accidents caused by maintenance or use of a vehicle in such an inherently dangerous capacity are not appropriately covered in a homeowners policy, but rather in an automobile policy which requires consequently higher premiums for the increased risk of injury."). Thus, the potentially-relevant exceptions (a), (b), and (d) in Section II.8 all require that the injury arise out of a vehicle "on the insured premises." *See* Doc. 32, Ex. A at 7. The other potentially relevant exception applies to situations in which the homeowner would only occasionally be using the vehicle because it is an off-road recreational vehicle that the insured *does not* own. *See* Section II.8(e).

It is undisputed that Hale's *injury* did not "aris[e] out of" an ATV "**in** dead storage on the premises" but rather, out of an ATV *in use* on a county road away from the premises. Thus, exception (a) does not apply. And exceptions (a) and (d) are not inconsistent or ambiguous. Exception (a) applies to injuries arising out of *any* inoperable motorized land vehicle currently in dead storage on the insured premises, including cars and trucks, and regardless of ownership, while exception (d) applies only to injuries arising out of vehicles designed for off-road recreational use, that are owned by the homeowner and operated on the insured premises. The Durans' homeowner policy does not provide coverage for the 2006 ATV accident involving Hale.

My analysis is supported in other case law. The "dead storage" exception in home-owner policies is a common one. Although I have found no New Mexico cases discussing the exception, there are many persuasive cases that do discuss it. For example, in *Pike v. American States Preferred Ins. Co.*, 55 P.3d 212 (Colo. Ct. App. 2002), a go-cart was in a garage before the insureds'

son's friend took it out and operated it on a public road, where he was struck and killed by a car. 55 P.2d at 213.  The homeowner's policy, as here, provided for similar exceptions to the motor-vehicle exclusions: the exclusions did not apply to "a vehicle . . . not subject to motor vehicle registration which is [] in dead storage on an 'insured location'" or to "a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and [] owned by an 'insured' and on an 'insured location.'" *Id.* at 215.  The plaintiff first argued, as here, that, because the negligence allegedly *began* with the homeowner not securing the go-cart in storage on the insured premises, the second exception applied, but the trial court held that "because the accident did not occur on an insured location, no coverage existed." *Id.*  The Court of Appeals affirmed, quoting a case holding that, "[t]o stretch the scope of 'accident' backward in time to reach the date of the earliest beginning of any prior event which might be regarded as having a causal relation to the unlooked-for mishap would introduce ambiguity where none now exists." *Id.* at 216 (internal quotation marks omitted).  "Because the location of the damage, and not the location of the [homeowner's] alleged failure to secure the go-cart, is the pivotal fact, the trial court correctly determined that the automobile exclusion applied and no coverage existed." *Id.*  In regard to the "dead storage" exception, the Court of Appeals adopted

> the reasoning in *American Family Mutual Insurance Co. v. Van Gerpen*, 151 F.3d 886, 888 (8th Cir.1998):
>
>> [D]ead storage is clearly a type of storage, and the state of being in storage is inconsistent with the state of being in use.  The "dead" in "dead storage" suggests, at the least, that the engine would not be running.  Reasonable minds might differ as to whether dead storage requires disconnecting the battery, draining the radiator, emptying the gas tank, or placing the [vehicle] up on blocks, but it is unreasonable to suggest that a [vehicle] is in "dead storage" when the engine is operating, the wheels are turning, and several people are riding around on it.

> *See also* P. Rambow, A Practical Guide on Emerging Issues in Insurance Policy Language, 27 Wm. Mitchell L. Rev. 1105 (2000).
>
> Clearly, here, the go-cart was being operated on a public road when the accident occurred. Thus, the trial court was correct in concluding that the go-cart was not in dead storage on an insured location at the time of the accident.

*Pike*, 55 P.3d at 216.

Insofar as the Durans may be seeking to gain coverage because Hale alleges that the Durans were negligent while the ATV was on their property, *see* Doc. 33 at 3 (stating that "there are a number of allegations regarding negligence in the original complaint," but arguing only that the exception portion of the policy regarding "dead storage" is ambiguous as discussed, *supra*), I conclude that no coverage exists. The parties agree the accident or Hale's injuries did not occur "while on an insured location," and the policy specifically excludes liability coverage both for an ATV the Durans owned that was operated off the insured premises and for negligent entrustment. Coverage explicitly turns on an "accident" that results in "bodily injury." *See Safeco Ins. Co. of Am. v. Mares*, No. 02-2164, 71 Fed. App'x 808, 811, 2003 WL 21916699, *3 (10th Cir. Aug. 12, 2003) (analyzing ATV exclusion for accidents occurring off an insured premises in a New Mexico homeowner's insurance policy).

**IT IS ORDERED** that the Plaintiff's Amended Motion for Summary Judgment (Doc. 31) is **GRANTED** and declared that the 2006 homeowner's insurance policy that Metropolitan issued to the Durans does not include liability or medical coverage regarding the June 6, 2006 ATV accident involving Chris Duran and Nathaniel Hale.

**DATED** this 29th day of July, 2011.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorneys for Plaintiff:*

James H. Johansen
P.O. Box 3170
Albuquerque, NM 87190-3170

Shawn Stephen Cummings
Butt, Thornton & Baher, P.C.
Post Office Box 3170
Albuquerque, NM 87190-3170

*Attorney for Defendants Bruce, Michelle, and Chris Duran:*

Santiago E Juarez
1822 Lomas Boulevard, NW
Albuquerque, NM 87104

*Attorney for Defendant Hale*:

Warren F. Hire , II
Ronald Bell & Associates, PC
610 Seventh St NW
Albuquerque, NM 87102